## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| LAYNE FRANKLIN,           )<br>                                          )<br>    Plaintiff,                      )<br>                                          )<br>    v.                                 )<br>                                          )<br>INDIANA FAMILY AND SOCIAL SERVICES )<br>ADMINISTRATION; DIVISION OF DISABILITY )<br>AND REHABILITATIVE SERVICES; BUREAU OF )<br>REHABILITATION SERVICES; VOCATIONAL )<br>REHABILITATION SERVICES; JENNIFER )<br>WALTHALL, in her official capacity as the Secretary )<br>of the Family and Social Services Administration; )<br>KYLEE HOPE, in her official capacity as Director of )<br>the Division of Disability and Rehabilitative Services; )<br>THERESA KOLESZAR, in her official capacity as )<br>Director of the Bureau of Rehabilitation Services and )<br>Vocational Rehabilitation Services,       )<br>                                          )<br>    Defendants.                    ) | Case No. 1:19-cv-3712<br><br><br><br>**COMPLAINT** |

### I.     INTRODUCTION

1.     This disability rights case is filed by an autistic college student against the State agencies and officials charged with administering vocational rehabilitation services to eligible participants in Indiana. These parties failed to provide the Plaintiff, Layne Franklin, with the services necessary for her vocational rehabilitation.

2.     Ms. Franklin is currently in her fifth and final year of study at the University of Indianapolis (hereinafter "UIndy"). She specifically chose to enroll at UIndy because it hosts the BUILD program, a unique opportunity for students with particular disabilities, including autism, to participate in tailored services to develop their academic performance and social skills.

3. The BUILD program provides UIndy students who have profound learning disabilities with a variety of inimitable and individualized services, including one-on-one tutoring, walk-in tutoring, an autism social skills group and activities, testing accommodations, a private study area, and advice regarding classes and career planning. University of Indianapolis, *The BUILD Program*, available at: http://uindy.edu/ssd/build (last accessed: August 26, 2019). Additionally, "[a]ll BUILD tutors have earned a bachelor's degree or higher, and all have training in working with students who have learning-related disabilities." *Id.*

4. When in high school, Ms. Franklin recognized that she would need assistance overcoming disability-related barriers to employment. As such, she applied to Indiana's Vocational Rehabilitation Services program (hereinafter "VRS"). She was deemed an eligible VRS participant on December 16, 2014.

5. VRS Counselor Anna Barrett categorized Ms. Franklin as "Most Severely Disabled" due to serious functional limitations in the areas of communication, interpersonal skills, and work skills. Ms. Barrett further noted in the Certification of Severity Level that Ms. Franklin would require "assistance with [the] BUILD program in order to achieve her vocational goal."

6. Ms. Franklin was accepted to UIndy and its BUILD program in 2015.

7. Before her first semester began, Ms. Franklin developed her Individualized Plan for Employment (hereinafter "IPE") with Ms. Barrett. Physical therapy assistant was identified as her employment goal. To support Ms. Franklin's pursuit of this outcome, VRS agreed to provide her with: VRS counseling and guidance services; tuition, fees, books, and supplies at UIndy; BUILD program expenses; driver's training through Crossroads; tutoring services through Schilling; and personal adjustment training services through Hands in Autism. Ms. Barrett noted that VRS would also provide Ms. Franklin with support for room and board at UIndy.

8. By accepting money from the federal government, state vocational rehabilitation programs, including VRS, are required to make certain services available to participants. *See* 34 C.F.R. § 361.48. One of these mandatory services is vocational training, including postsecondary education. *Id.*

9. Postsecondary services provided by vocational rehabilitation programs encompass "[v]ocational and other training services, including personal and vocational adjustment training, advanced training in, but not limited to, a field of science, technology, engineering, mathematics (including computer science), medicine, law, or business; books, tools, and other training materials . . . ." 34 C.F.R. § 361.48(b)(6).

10. Indiana regulations also specify that room and board can be an allowable postsecondary education expense. "The VR[S] program may pay for room and board expenses, not to exceed the amount documented: (1) for institutional room and board; or (2) for private housing other than the individual's own residence." 460 Ind. Admin. Code § 14-18-4(b).

11. Initially, VRS properly funded Ms. Franklin's postsecondary studies. During the 2015-2016 school year, VRS authorized $6,598 per semester in postsecondary support,[1] along with an additional $3,040 per semester for BUILD program expenses. During the 2016-2017 school year, VRS authorized, per semester, $7,555 for tuition, $1,784 for room and board, $625 for books and supplies, and $3,158 for BUILD program expenses.

12. On September 15, 2017, following the adoption by VRS of a new fee schedule, Ms. Franklin received notice that VRS reduced her postsecondary support to $1,111 for tuition and $3,268 for BUILD program expenses, per semester, during the 2017-2018 academic year. This

---

[1] Postsecondary support, as authorized for Ms. Franklin, included tuition, room and board, books and supplies, and ancillary fees. Postsecondary support may also include training materials, such as computers, hardware, and software; care for dependent minors, aged family members, or disabled family members; and personal expenses. *See* 460 Ind. Admin. Code § 14-18-4.

COMPLAINT - 3

authorized total was insufficient to pay for Ms. Franklin's vocationally relevant and necessary services. That year, UIndy tuition was $27,860, room and board was $9,988, and mandatory fees (which exclude textbooks) were $530.

13. Each semester thereafter, through its most recent calculation for Spring 2019, VRS has fully paid for BUILD program expenses but otherwise reduced support for other postsecondary services.

14. VRS has not challenged Ms. Franklin's need for BUILD program services to achieve her employment goal; even as VRS decreased funding for other postsecondary services, funding for the BUILD program increased.

15. Crucially, however, participation in the BUILD program is limited to UIndy students. If Ms. Franklin were no longer a student at UIndy, she could no longer participate in BUILD programming. As VRS has documented, Ms. Franklin cannot achieve her employment goal without participating in the BUILD program.

16. In following its new fee schedule, VRS is refusing to fully support Ms. Franklin's studies at UIndy and, as a result, is jeopardizing Ms. Franklin's ability to participate in the BUILD program and the likelihood that she will attain her employment objective. By not funding the required UIndy tuition, room and board, and other expenses that accompany the BUILD program, VRS is constructively denying the remaining vocational rehabilitation services, including the BUILD program.

17. Ms. Franklin now brings this action against Defendants pursuant to the Americans with Disabilities Act (hereinafter "ADA") and the Rehabilitation Act. This complaint is filed specifically in regard to VRS's 2017-2018 postsecondary fee schedule, a facially neutral policy that has a discriminatory effect, and VRS's refusal to provide Ms. Franklin a reasonable

accommodation to that policy. This complaint is not seeking judicial review of any of VRS's specific decisions with regard to Ms. Franklin's services. Ms. Franklin seeks a declaration that her rights were violated and compensatory damages for injuries she suffered as a result of the denial of her civil rights.

## II.   VENUE AND JURISDICTION

18. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

19. Defendants are located within this District, and the events giving rise to the claims identified within this Complaint substantially occurred in this District. Pursuant to 28 U.S.C. § 1391(b), this Court is the proper venue.

## III.   PARTIES

20. Plaintiff Layne Franklin's permanent residence is in Bartholomew County, Indiana. When Plaintiff is attending school, she resides on-campus in Marion County, Indiana. Both counties are located within the Southern District of Indiana.

21. Defendants Family and Social Services Administration, Division of Disability and Rehabilitative Services, and Bureau of Rehabilitation Services/VRS are each located and headquartered in Marion County, Indiana.

22. Defendants Jennifer Walthall, Kylee Hope, and Theresa Koleszar are the executive agents of their respective agencies. Each of these agencies is located in Marion County, Indiana. Secretary Walthall and Directors Hope and Koleszar each have an office in Marion County, Indiana.

23. Each defendant was, at all times relevant, the agent, employee, or representative of each other defendant. Each defendant, in doing the acts or committing the acts as alleged in this

complaint, was acting within the course and scope of their actual or apparent authority pursuant to such agency, or the alleged acts or omissions of each defendant as were subsequently ratified and adopted by each defendant as principal.

## IV.   FACTS

24. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

25. Ms. Franklin has Autism Spectrum Disorder, which significantly limits her ability to communicate, think, concentrate, and learn. Therefore, Ms. Franklin is a person with a disability for the purpose of Section 504 of the Rehabilitation Act and Title II of the ADA.

26. Ms. Franklin was found eligible to participate in the VRS program on December 16, 2014. She was categorized as "Most Severely Disabled" due to severe functional limitations in the areas of communication, interpersonal skills, and work skills.

27. Ms. Franklin's first IPE was developed on May 6, 2015. It identified her goal to become an occupational therapist, as well as the services VRS would provide to help Ms. Franklin achieve her goal. Services identified within the IPE included: tuition, on-campus room and board, fees, books, and supplies for UIndy; BUILD program expenses; and personal adjustment training through Hands in Autism.

28. For two years, VRS provided the postsecondary supports Ms. Franklin required to successfully pursue her bachelor's degree. During the 2015-2016 academic year, VR authorized $6,598 per semester for Ms. Franklin's tuition, as well as an additional $3,040 per semester for BUILD program expenses. During each semester of the 2016-2017 academic year, VR authorized $7,555 for tuition, $1,784 for room and board, $625 for books, and $3,158 for BUILD program expenses.

29. In an effort to rebalance staff caseloads, and because Ms. Franklin's permanent residence is in Columbus, VRS transferred her case from an Indianapolis office to the Columbus office in 2017.

30. Ms. Franklin met with her new VRS counselor, Eric Elkins, in Summer 2017 to review and amend her IPE. At this time, Ms. Franklin's employment goal was amended from occupational therapist to physical therapist assistant. In pursuit of that goal, VRS and Ms. Franklin agreed the following services and providers were appropriate: VR counseling and guidance, provided through VRS; "4yr of college tuition," "on campus college residential," "4yr ancillary fee," "4yr books," and "4yr supplies," provided through the University of Indianapolis; the BUILD program at UIndy, funded through VRS; driver's training, provided through Crossroads Rehabilitation Center; supplemental tutoring, as necessary, through Club Z!; personal adjustment training, provided by IUPUI; and therapy to improve social skills, provided by Positive Pathways.

31. To her surprise, in September 2017, Mr. Elkins sent Ms. Franklin notice that VRS would provide only $1,111, per semester, in postsecondary support, in addition to $3,268, per semester, for BUILD program fees.[2] Despite the agreements in her IPE, VRS would provide no support for room and board. VRS's funding determination for the Fall 2017 semester represents the beginning of Ms. Franklin's issues with VRS's newly-created 2017-2018 postsecondary fee schedule and is, along with VRS's Spring 2018 authorization, the subject of this complaint. VRS maintains that due to the 2017-2018 postsecondary fee schedule, they could not fund her education at UIndy.

---

[2] Ms. Franklin did appeal VRS's funding determination through the administrative hearing, agency review, and judicial review processes. However, Ms. Franklin was limited to claims that VRS misinterpreted or otherwise violated its own regulations. Ms. Franklin could not challenge the discriminatory nature and illegality of VRS's postsecondary fee schedule, which is the subject of this complaint.

32. Undergraduate tuition for a full-time student at UIndy for the 2017-2018 academic year was $27,860. Mandatory fees, not including books, increased undergraduate student expenditures by an additional $530. Room and board expenses added $9,988 to undergraduate expenses during the 2017-2018 academic year.

33. Ms. Franklin is a Supplemental Security Income ("SSI") beneficiary, a status requiring that she maintain no more than $2,000 in countable resources. *See* 20 C.F.R. § 416.1205(c). Moreover, because SSI is a means-tested program for low-income individuals, Ms. Franklin's SSI status demonstrates that she does not have a significant income. *See* 20 C.F.R. § 416.1102 et seq. Given these financial circumstances, Ms. Franklin had no means to pay the gap between her actual postsecondary expenses that remained after her scholarships, grants, and VRS support had been applied.

34. Ms. Franklin and her mother communicated with VRS staff multiple times, explaining the $4,379 provided by VRS would leave Ms. Franklin with an outstanding balance of $18,078 for the Fall 2017 semester. An identical shortfall was anticipated for the Spring 2018 semester.

35. Mr. Elkins and the VRS Area Supervisor asserted that Ms. Franklin could attend a less expensive school to obtain her bachelor's degree, as required by the postsecondary fee schedule. VRS noted that the amount of support it had authorized Ms. Franklin was sufficient for enrollment in a public institution, such as IUPUI. VRS would not provide an exception or an accommodation to this policy's requirements.

36. Attempting to cooperate with VRS, Ms. Franklin, her mother, and her behavioral therapist, Stephanie Shank, explored resources other than the BUILD program for postsecondary students with autism in Indiana. After a thorough investigation, which included in-person visits to

Indiana University campuses, Ms. Franklin determined Indiana's public schools simply could not meet her disability-related vocational needs. Students at Indiana University's Bloomington campus, for example, are responsible for identifying and scheduling their own tutors. This responsibility would overwhelm Ms. Franklin. In addition to the difficulty of finding tutors knowledgeable both in subject matter and in teaching individuals with autism, the need to manage multiple tutors would frustrate Ms. Franklin and distract her from focusing on her studies. Due to her autism, Ms. Franklin has difficulty moving past frustration, and has historically blamed herself, suffered increased anxiety, and regressed behaviorally when exasperated.

37. Even if services offered through multiple new programs were cobbled together, they would still fail to meet the tailored offerings of the BUILD program. First, adjusting to change – and, in particular, new social environments – is incredibly difficult for many with autism, including Ms. Franklin. Over the course of more than three years, Ms. Franklin has become accustomed to working with BUILD program staff. The stress of working with new individuals, from a variety of programs, could cause Ms. Franklin to regress behaviorally. Second, if Ms. Franklin were to receive services through multiple programs, she would be responsible for administering schedules and sharing information between them. Such responsibility would be particularly difficult for Ms. Franklin, whose autism causes her difficulty with organizational skills. At the BUILD program, Ms. Franklin can simply walk in and request tutoring, from individuals that have subject matter expertise and better skilled in instructing students with autism.

38. Meanwhile, per her request, Ms. Franklin's case was transferred back to Indianapolis. VRS Counselor Jason Resler authorized $1,111 for tuition and books, as well as $3,268 for the BUILD program, for Ms. Franklin's Spring 2018 semester.

39. In February 2018, Mr. Resler asked Ms. Franklin to meet to amend her IPE. Her career interests had shifted to public health and patient advocacy. Parties agreed that Ms. Franklin's employment outcome should be changed to Community Health Worker. However, the parties disagreed in regard to the IPE template's boilerplate components. In particular, Ms. Franklin did not want to sign an IPE drafted by Mr. Resler because she was concerned it would leave her open to the same postsecondary support reductions she experienced during the 2017-2018 academic year.

40. Because VRS annually revises its postsecondary fee schedule in late summer, Mr. Resler and VRS were asking Ms. Franklin to commit to accepting a fee schedule that she had not seen. The 2018-2019 postsecondary fee schedule was not even developed at that time. Moreover, because the fee schedule does not go through the formal State promulgation process, Ms. Franklin had no control over the fee schedule's contents or restrictions.

41. Indeed, VRS's 2017-2018 postsecondary fee schedule was incredibly restrictive. It "applies to all post-secondary institutions, including private colleges/universities, in-state institutions and out of state institutions." It offered participants no means by which to request an exception or accommodation, either for disability-related or employment outcome-related reasons. The fee schedule additionally capped the per-semester amount of support that VRS could authorize to postsecondary participants at $5,267 for undergraduate tuition and fees, $580 for books and materials, and $5,129 for room and board.

42. Notably, VRS's 2018-2019 postsecondary fee schedule included a new statement: "A participant may submit a written request to the VR program for an exception to the rate schedule if a participant's disability-related needs for accessing post-secondary education to meet their employment outcome cannot be met applying the rate schedule." The same statement is

included in VRS's 2019-2020 postsecondary fee schedule, as well. This added language suggests that VRS was aware its 2017-2018 fee schedule violated federal law by failing to offer participants a means through which their individualized needs could be considered and an accommodation could be granted.

43. There now exists an actual controversy between Defendants and Plaintiff regarding Defendants' duties under federal civil rights laws. Accordingly, Ms. Franklin is entitled to declaratory relief.

44. Unless enjoined, Defendants will continue to engage in the unlawful acts and the discrimination described in this complaint. Continued discrimination has already been witnessed. Ms. Franklin has no adequate remedy at law. She suffers, and will continue to suffer, irreparable injury from Defendants' discriminatory actions against participants with disabilities who need disability-related postsecondary supports apart from those that can be accessed at public colleges, unless relief is provided by this Court. Accordingly, Ms. Franklin is entitled to injunctive relief.

45. Defendants' refusal to accommodate Ms. Franklin's disabilities has caused her harm, including, but not limited to:

   a. denial of equal access to Defendants' programs and services;
   b. financial indebtedness incurred to UIndy during the 2017-2018 academic year;
   c. emotional distress and pain, embarrassment, mental anguish, inconvenience, and loss of enjoyment of life, resulting from Defendants' refusal to reasonably accommodate her disability-based vocational rehabilitation needs.

## IV. CLAIMS

### A. First Claim

### [Rehabilitation Act]

46. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

47. Section 504 of the Rehabilitation Act and its implementing regulations provide that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see also* 34 C.F.R. § 104.4(a).

48. Among other requirements, entities subject to Section 504 cannot deny qualified individuals with disabilities from participating in, or benefiting from, any aid, benefit, or service. 34 C.F.R. § 104.4(b)(1)(i).

49. Aids, benefits, and services must be afforded to qualified individuals with disabilities in a manner that provides them with the same opportunity to participate as is afforded to other individuals. 34 C.F.R. § 104.4(b)(1)(ii). Entities subject to Section 504 must also refrain from providing qualified individuals with disabilities lack effective aids, benefits, or services than are provided to others. 34 C.F.R. § 104.4(b)(1)(iii).

50. Moreover, entities subject to the Rehabilitation Act's Section 504 must avoid otherwise limiting the qualified individual with a disability in his or her enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service. 34 C.F.R. § 104.4(b)(1)(vi).

51. An "individual with a disability" is defined by reference to the ADA. 29 U.S.C. § 705(20)(B); referencing 42 U.S.C. § 12102(1). An individual has a disability under Section 504 if he or she has a physical or mental impairment substantially limiting one or more major life activity. 42 U.S.C. § 12102(1).

52. Major life activities include, but are not limited to, seeing, hearing, speaking, learning, reading, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A).

53. A "qualified individual with a disability" is one who, with or without reasonable accommodations, meets the essential eligibility requirements to receive services from, or participate in, programs or activities of a recipient of federal financial assistance. *See* 29 U.S.C. § 794(a).

54. A "program or activity" includes departments, agencies, and other instrumentalities of State government. 29 U.S.C. § 794(b)(1)(A). A "recipient of federal financial assistance" is a public or private agency or other entity to which federal financial assistance is extended, whether directly or through another recipient. 34 C.F.R. § 104.3(f).

55. Ms. Franklin is an individual who has a mental impairment including, but not limited to, Autism Spectrum Disorder.

56. Ms. Franklin's impairments affect the major life activities of caring for herself, thinking, communicating, speaking, concentrating, learning, and working. *See* 42 U.S.C. § 12102(2).

57. Ms. Franklin is an individual with a disability as defined by Section 504 of the Rehabilitation Act. 29 U.S.C. § 705(20)(B); referencing 42 U.S.C. § 12102(1).

58. Ms. Franklin is an otherwise qualified individual with a disability who meets the essential eligibility requirements to receive services from or participate in the programs or

activities of Defendants. *See* 29 U.S.C. § 794 (b)(2)(B), referencing 20 U.S.C. § 7801(26); 20 U.S.C. § 7801(30).

59. The Family and Social Services Administration (hereinafter "FSSA"), DDRS, and BRS/VRS each receive federal funds, making them recipients of federal financial assistance.

60. FSSA, DDRS, and BRS/VRS are each entities subject to the non-discrimination requirements of Section 504. *See* 29 U.S.C. § 794(a); *see also* 34 C.F.R. § 104.4.

61. Jennifer Walthall, as Secretary of FSSA, is an employee and agent of FSSA.

62. Kylee Hope, as Director of DDRS, is an employee and agent of DDRS.

63. Theresa Koleszar, as Director of BRS/VRS, is an employee is and agent of BRS/VRS.

64. Defendants' refusal to provide Ms. Franklin with necessary services to pursue postsecondary education in support of her employment outcome constitutes discrimination against Ms. Franklin; she was denied equal access and otherwise limited access to Defendants' programs and services, as compared to her non-autistic, non-BUILD-program-participant peers. *See* 34 C.F.R. §§ 104.4(a), 104.4(b)(ii) and (iv). VRS participants who could pursue their employment outcomes without attending a specific postsecondary institution had their needs met under VRS's 2017-2018 postsecondary fee schedule. However, VRS participants, including Ms. Franklin, who could not achieve their employment outcome without attending a particular postsecondary institution due to their specific disability-related needs, were denied and otherwise limited access to VRS's postsecondary services, per its 2017-2018 fee schedule.

65. As a proximate cause of these violations of Section 504, Ms. Franklin has suffered harm as set forth above.

## B. Second Claim

### [Americans with Disabilities Act]

66. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

67. Title II of the ADA and its implementing regulations forbid public entities from excluding or denying people with disabilities the benefits of that entity's services, programs, or activities, and from discriminating based upon disability. 42 U.S.C. § 12132; 28 C.F.R. §§ 35.104, 35.130(a).

68. Prohibited disability-based discrimination by public entities includes the failure to provide qualified individuals with disabilities an equal opportunity to participate in, or to benefit from, aids, benefits, or services, or "otherwise limit" a qualified individual with a disability in the enjoyment of any rights, privilege, aid, benefit, or service. 28 C.F.R. §§ 35.130(b)(1)(ii) and (vii). Prohibited discrimination additionally includes the failure to make reasonable modifications as necessary to avoid discrimination against an individual based on their disability. 28 C.F.R. § 35.130(b)(7).

69. An "individual with a disability" is one who has a physical or mental impairment that substantially limits one or more of their major life activities. 42 U.S.C. § 12102(1).

70. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning, communicating, and working. 42 U.S.C. § 12102(2)(A).

71. A "qualified individual with a disability" is a person who, with or without reasonable accommodations for his or her disability, meets the essential eligibility requirements to

receive services from or participate in the programs or activities of the public entity. 42 U.S.C. § 12131(2).

72. Ms. Franklin is an individual who has a mental impairment including, but not limited to, Autism Spectrum Disorder.

73. Ms. Franklin's impairments affect her major life activities. *See* 42 U.S.C. § 12102(2)(A).

74. Ms. Franklin is an otherwise qualified individual with a disability who meets the essential eligibility requirements to receive services from or participate in the programs or activities of Defendants. *See* 42 U.S.C. § 12131(2).

75. FSSA, DDRS, and BRS/VRS are each public entities prohibited from discriminating based on disability. *See* 42 U.S.C. § 12132.

76. Jennifer Walthall, as Secretary of FSSA, is an employee and agent of FSSA.

77. Kylee Hope, as Director of DDRS, is an employee and agent of DDRS.

78. Theresa Koleszar, as Director of BRS/VRS, is an employee and agent of BRS/VRS.

79. VRS's 2017-2018 postsecondary fee schedule is discriminatory, in that it has a disparate impact upon participants with disabilities who must attend a particular postsecondary institution due to their disability-related needs. The fee schedule was applied to all postsecondary participants, without any opportunity for those participants to seek a reasonable accommodation. For that reason, only participants whose disabilities-related needs could be met at a public college could be appropriately served under the fee schedule.

80. Defendants' deliberate refusal to grant Ms. Franklin an exception to the fee schedule and otherwise limiting her access to Defendants' programs and services, as compared to her non-autistic peers, constitutes discrimination. *See* 28 C.F.R. §§ 35.130(a), 35.130(b)(1)(ii) and

(vii). VRS's own staff concluded that Ms. Franklin could not successfully obtain a bachelor's degree, identified as a prerequisite to her attainment of employment, unless she participated in UIndy's BUILD program. Yet VRS's 2017-2018 postsecondary fee schedule only provided adequate postsecondary support to participants enrolled in Indiana's public colleges. By limiting the amount of postsecondary support participants could receive to the amount charged by public colleges, and by refusing to consider any requests for accommodation to that policy, VRS knew its fee schedule would have a discriminatory effect on students like Ms. Franklin, whose disabilities dictate their attendance at specific postsecondary institutions.

81. Defendants illegally discriminated against Ms. Franklin in their persistent refusal to reasonably accommodate her as a person with disabilities who must participate in the BUILD program. *See* 28 C.F.R. §§ 35.130(b)(7).

82. Defendants' discrimination was intentional; Defendants knowingly refused to accommodate Ms. Franklin, despite their acknowledgement that Ms. Franklin must participate in the BUILD program to succeed vocationally. Nonetheless, Defendants refused to grant Ms. Franklin equal access to postsecondary programs and services as compared to her non-autistic peers that do not require participation in the BUILD program to meet their individualized employment outcomes.

83. Defendants' discrimination also had a disparate impact on participants with disabilities whose postsecondary needs cannot be met at public colleges. Defendants required all participants to abide by the fee schedule's limitations and refused to provide reasonable accommodations for disability-related needs.

84. As a proximate cause of these violations of Title II of the ADA, Ms. Franklin has suffered harm as set forth above.

## V. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

    1.    Enter judgment in her favor against each Defendant;

    2.    Declare that each Defendant violated Plaintiff's rights under Section 504 of the Rehabilitation Act and Title II of the ADA;

    3.    Grant affirmative injunctive relief requiring Defendants, their contractors, agents, employees, assignees, and all persons acting in concert or participating with them, to take affirmative action to provide equal access to all participants seeking postsecondary services without regard to disability as required by federal law, including Ms. Franklin;

    4.    Award her damages in an amount to be determined at trial;

    5.    Award attorneys' fees pursuant to the Rehabilitation Act, the ADA, and 42 U.S.C. § 1988; and

    6.    Grant any other relief this Court deems appropriate.

Dated: August 30, 2019.

Respectfully submitted,

*s/ Nikki Gray*
Nikki Gray
Attorney No. 31209-49
Emily Munson
Attorney No. 29025-49
INDIANA DISABILITY RIGHTS
4701 North Keystone Ave., Suite 222
Indianapolis, IN 46205
Phone: 317-504-2578
Fax: 317-722-5564
emunson1@indianadisabilityrights.org
ngray@indianadisabilityrights.org